# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 5
The People &c.,
　　　　Appellant,
　　　v.
Michael Thomas,
　　　　Respondent.

Jean M. Joyce, for appellant.
Melissa S. Horlick, for respondent.

STEIN, J.:

　　　　The issue on this appeal is whether a resentence on a prior conviction—imposed
after the original sentence is vacated as illegal—resets the date of sentencing for purposes
of determining a defendant's predicate felony status. We hold that the date on which

- 1 -

sentence was first imposed upon a prior conviction—not the date of any subsequent resentencings on that same conviction—is the relevant date for purposes of determining when "[s]entence upon such prior conviction [was] imposed" (Penal Law § 70.06 [1] [b] [ii]).

-I-

In 1989, defendant was convicted, upon his guilty plea, of attempted robbery in the second degree and, based upon two 1988 youthful offender adjudications, was erroneously sentenced as a second felony offender to 2 ½ to 5 years in prison (see CPL 720.35 [1]; People v Kuey, 83 NY2d 278, 283 [1994]). Later that year, defendant was convicted in another county, also upon a plea of guilty, of attempted robbery in the first degree, and was, again, erroneously sentenced as a second felony offender, because of the same youthful offender adjudications, to 3 ½ to 7 years in prison. In 1993, a jury convicted defendant of robbery in the third degree, for which he was sentenced as a second felony offender to 3½ to 7 years in prison based upon, as relevant here, his two prior 1989 convictions.[1]

In 2008 and 2011, respectively, long after he served all of the aforementioned sentences,[2] defendant moved to set aside his sentences on each of the 1989 convictions, arguing that his status as a second felony offender in both cases was improperly premised

---

[1] To the extent that the 1993 sentencing court also characterized defendant's 1988 youthful offender adjudications as predicate felony convictions, the People have conceded that the use of the youthful offender adjudications was error.

[2] Defendant remained in prison serving a sentence of 25 years to life imposed on a subsequent conviction for robbery in the first degree and attempted robbery in the first degree, on which he was sentenced as a persistent violent felon.

on the use of his 1988 youthful offender adjudications, which cannot be used as convictions for enhanced sentencing purposes.  The motions to vacate the original sentences imposed on the 1989 convictions were granted, and the courts resentenced defendant accordingly.  In both instances, the court reimposed the original indeterminate maximum prison sentences, and modified the minimum sentences by reducing them from one-half to one-third of the statutory maximums (see Penal Law § 70.06 [4] [b]).

Defendant then moved to set aside the sentence on his 1993 conviction, and requested that he be resentenced on that conviction as a first-time offender, arguing that his 1989 convictions were no longer predicate felonies within the meaning of Penal Law § 70.06 (1) (b) (ii)—governing second felony offender status—because he was resentenced on both after the commission of the offense underlying the 1993 conviction.  Supreme Court initially denied defendant's motion, concluding that the original date of sentencing controlled for predicate felony purposes.  However, on defendant's second motion to set aside the sentence on his 1993 conviction, following the decision of the Appellate Division in People v Esquiled (121 AD3d 807 [2d Dept 2014], lv denied 25 NY3d 1201 [2015]), Supreme Court agreed that Esquiled required defendant to be resentenced as a first-time offender.   The People appealed, and the Appellate Division affirmed (153 AD3d 860 [2d Dept 2017]).  That Court explained that, under Esquiled, "for purposes of determining whether a prior conviction is a predicate felony conviction, the sentence upon such prior conviction must have been imposed before commission of the present felony" (153 AD3d at 861 [internal quotation marks and citations omitted]).  A Judge of this Court granted the People leave to appeal (30 NY3d 1064 [2017]), and we now reverse.

-II-

Penal Law § 70.06 requires a sentencing court to impose an enhanced sentence where the defendant is a "second felony offender"—a person "who stands convicted of a felony . . ., other than a class A-I felony, after having previously been subjected to one or more predicate felony convictions" (Penal Law § 70.06 [1] [a]).  As relevant here, a prior conviction will not constitute a predicate felony unless it satisfies the "sequentiality requirement"—namely, that the "[s]entence upon such prior conviction must have been imposed before commission of the present felony" (Penal Law § 70.06 [1] [b] [ii] [emphasis added]).  Relatedly, the "sentence [also] must have been imposed not more than [10] years before commission of the felony of which the defendant presently stands convicted" (Penal Law § 70.06 [1] [b] [iv]).[3]  The question presented on this appeal is whether the term "sentence" in these provisions means "resentence" where the original sentence was vacated because defendant was illegally sentenced as a predicate offender, yet the underlying conviction remains undisturbed.  In other words, we must decide whether, as urged by defendant, a resentence on a prior conviction imposed after the commission of a subsequent crime disrupts sequentiality such that the "[s]entence upon such prior conviction" can no longer be considered to have been imposed prior to commission of the present felony (Penal Law § 70.06 [1] [b] [ii]).  We reject this strained

---

[3] This 10-year look-back period is tolled for "any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony" (Penal Law § 70.06 [1] [b] [v]).

interpretation of the predicate felony statutes, because it defies the express language, and would defeat the purpose, of those statutes.

In answering any "question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006] [internal quotation marks and citations omitted]; see People v Andujar, 30 NY3d 160, 166 [2017]). Because "the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see People v Roberts, 31 NY3d 406, 418 [2018]). We also must consider "the spirit and purpose of the act and the objects to be accomplished" (People v Silburn, 31 NY3d 144, 155 [2018]). Critically, "a statute . . . must be construed as a whole and . . . its various sections must be considered together and with reference to each other" (Matter of Avella v City of New York, 29 NY3d 425, 434 [2017] [internal quotation marks and citation omitted]).

As this Court has previously observed (People v Thompson, 26 NY3d 678, 687 [2016]), the statutory text of Penal Law § 70.06, itself, establishes that the term "sentence" is not synonymous with the term "resentence." Specifically, for purposes of the sequentiality requirement and 10-year look-back period, section 70.06 defines "sentence" as a "[s]uspended sentence, suspended execution of sentence, a sentence of probation, a sentence of conditional discharge or of unconditional discharge, and a sentence of certification to the care and custody of the division of substance abuse services" (Penal

Law § 70.06 [1] [b] [iii]).[4]  Conspicuously absent from this definition is any reference to a "resentence."  In Thompson, we explained that the use of the word "sentence," and not the word "resentence," is particularly significant because—"unlike a 'sentence of probation'—a 'resentence' is not defined as a 'sentence' under [the predicate felony statutes]" (26 NY3d at 687).  The dissent posits that the resentence in Thompson was different from the resentence at issue here because Thompson involved a revocation of probation, which "does not equate to annulling a sentence" (dissenting op at 6).  The predicate felony statutes, however, make no such distinction between types of resentences.

The omission of any reference to a resentence in the predicate felony statutes is not "gratuitous," as defendant asserts.  For example, CPL 450.30 (3) similarly distinguishes between a resentence and a sentence for purposes of taking an appeal, providing that

> "[a]n appeal from a sentence . . . means an appeal from either the sentence originally imposed or from a resentence following an order vacating the original sentence.  For purposes of appeal, the judgment consists of the conviction and the original sentence only, and when a resentence occurs more than [30] days after the original sentence, a defendant who has not previously filed a notice of appeal from the judgment may not appeal from the judgment, but only from the resentence."

Inasmuch as the legislature expressly distinguished a "sentence" from a "resentence" in the Criminal Procedural Law, a related statute, there is no reason to conclude that those terms are always interchangeable in the Penal Law (see People v Duggins, 3 NY3d 522, 528

---

[4] This same definitional provision—together with the sequentiality requirement and 10-year look-back-period—is repeated in the second violent felony offender statute (see Penal Law § 70.04 [1] [b]) and also controls other predicate felony statutes (see Penal Law §§ 70.07 [3]; 70.08 [1] [b]).

[2004] [applying a CPL definition to a Penal Law provision using the same phrase because, "(w)here the same word or group of words is used in . . . different statutes, if the acts are similar in intent and character the same meaning may be attached to them" (internal quotation marks and citation omitted)]).   Indeed, had the legislature intended a "resentence" to be synonymous with a "sentence" for predicate felony purposes,[5] it was aware—as demonstrated by the text of CPL 450.30 (3)—how to make this directive explicit (see McKinney's Cons Laws of NY, Book 1, Statutes § 74; El-Dehdan v El-Dehdan, 26 NY3d 19, 34 [2015]).   Nevertheless, the legislature did not do so, despite its inclusion of provisions in the predicate felony statutes defining the term "sentence" for purposes of determining whether prior offenses are predicate felonies.   Thus, the dissent's assumption that "sentence" obviously means "currently-existing, legal sentence" (dissenting op at 2), whether or not a defendant has been resentenced, is simply unfounded.

Defendant argues, and the dissent agrees, that People v Bell (73 NY2d 153 [1989]) requires that there be only one controlling sentence for purposes of determining whether a crime constitutes a predicate felony, and that the proper sentence is the one imposed as part of the "final judgment" (id. at 165).   The CPL, however, directs that the sentence imposed as part of the final judgment is the original sentence imposed on the conviction, not a resentence (see CPL 1.20 [15] ["(a) judgment is comprised of a conviction and the sentence imposed thereon and is completed by imposition and entry of the sentence"]; CPL 450.30 [3] ["the judgment consists of the conviction and the original sentence only" (emphasis

---

[5] We do not opine on the legislature's use of the words "sentence" and "resentence" in any other context.

added)]).  In any event, Bell is inapposite.  That case stands for the unassailable rule that a conviction that is subsequently vacated on direct appeal no longer exists and, therefore, can have no utility for determining whether a prior offense falls within the 10-year look-back period of the predicate felony statutes (see Bell, 73 NY2d at 165; see Penal Law § 70.06 [1] [a] ["(a) second felony offender is a person who" firstly, "stands convicted of a felony"]).  There is no dispute in this case that defendant's 1989 convictions are lawful and were never disturbed.  Therefore, Bell does not apply here.

Instead, we conclude that the circumstances presented in this case are more analogous to those in People v Boyer (22 NY3d 15 [2013]).  Defendant attempts to distinguish Boyer on the ground that it involved a resentencing to correct a trial court's failure to pronounce the postrelease supervision (PRS) component of a determinate sentence under People v Sparber (10 NY3d 457 [2008]).  Boyer held that a Sparber resentencing does not "reset[] the date of sentence for a felony conviction such that it may no longer serve as a predicate felony conviction in relation to a subsequently committed crime" (22 NY3d at 25).  In rejecting the defendant's claim that a "Sparber resentencing necessarily vacates the defendant's entire original unlawful sentence and replaces it with a completely new lawful sentence, thus resetting the date of all components of the defendant's sentence," we determined that "the controlling date of sentence for a defendant's prior conviction is the original date on which the defendant received a lawful prison term pursuant to a valid conviction for that prior crime" (Boyer 22 NY3d at 23-24).  As noted by defendant and the dissent, in reaching this conclusion, we suggested that Sparber resentencings were unlike other resentencings because "correct[ing] the flawed

imposition of PRS does not vacate the original sentence and replace it with an entirely new sentence, but instead merely corrects a clerical error and leaves the original sentence, along with the date of that sentence, undisturbed" (Boyer 22 NY3d at 24; see People v Lingle, 16 NY3d 621, 634-635 [2011]). However, we also made clear in Boyer that "we [were] not opin[ing] on the relationship between the recidivist sentencing statutes and any other form of resentencing" (Boyer, 22 NY3d at 26 n 3). The present appeal presents us with our first opportunity to address this relationship, and we conclude that the essential holding in Boyer—that the original sentence determines the sequentiality of the prior offense where there is a subsequent Sparber resentencing—also applies where the resentencing is to correct a sentence that is illegal because the defendant was improperly adjudicated a predicate felony offender.

Defendant argues, and the dissent agrees, that a "plenary" resentencing, such as the one that occurred here, is distinguishable from a Sparber resentencing because the latter merely adds a required PRS term to an otherwise legal sentence, while a plenary resentencing involves vacatur of an illegal sentence. As we have recently explained, however, a Sparber resentencing does, in fact, correct an "illegal" sentence (People v Estremera, 30 NY3d 268, 271 [2017]). Thus, if the sequentiality requirement turned on the date of the "currently-existing, legal sentence"—as the dissent posits—the date of a Sparber resentencing, not the original sentence date, would have controlled in Boyer

because the original sentence was illegal.[6]  We rejected this rule in Boyer and now clarify

that the express language of the predicate felony statutes, not the plenary or clerical nature

of the resentencing, determine the date that "[s]entence upon [the] prior conviction [was]

imposed" (Penal Law § 70.06 [1] [b] [ii]).  The statute provides no basis to distinguish

between a sentence that is illegal because the defendant was improperly adjudicated a

predicate felon and one that is illegal because PRS was not pronounced at sentencing, and

we decline defendant's invitation to fashion such a distinction here.  Rather, where

"[s]entence upon such prior conviction [was] imposed before commission of the present

felony" (Penal Law § 70.06 [1] [b] [ii]), the sequentiality requirement is satisfied, even if,

at some undetermined time in the future, the original sentence is vacated as illegal, resulting

in a resentence.

Not only does this rule avoid rewriting the predicate felony statutes to insert the

phrase "resentence"—or, as the dissent would have it, "currently-existing, legal sentence,"

—in place of "sentence" in order to conjure what our dissenting colleagues consider to be

a more fair result (see Matter of Chemical Specialties Mfrs. Assn. v Jorling,  85 NY2d 382,

394 [1995] ["(n)ew language cannot be imported into a statute to give it a meaning not

otherwise found therein" (internal quotation marks and citation omitted)]; see also

McKinney's Cons Laws of NY, Book 1, Statutes § 73 ["(t)he courts in construing statutes

_____

[6] The dissent would, in effect, have us either overrule Boyer or repudiate our statement in Estremera that a Sparber resentencing allows the trial court to reimpose sentence even if the "terms are identical to the illegal sentence originally imposed" (Estremera, 30 NY3d at 271).  We decline to do either inasmuch as Boyer and Estremera are both entirely consistent with the plain language of the predicate felony statute.

should avoid judicial legislation; they do not sit in review of the discretion of the Legislature or determine the expediency, wisdom, or propriety of its action on matters within its powers"]), it also effectuates the long-recognized purpose of those statutes (see Silburn, 31 NY3d at 155). By enacting harsher punishments for recidivists, the legislature intended to penalize qualifying defendants for their "refusal to reform after sentence on a prior crime had been imposed" (People v Morse, 62 NY2d 205, 222 [1984], appeal dismissed 469 US 1186 [1985]). Put differently, the goal was "to deter recidivism by enhancing the punishments of those who, having been convicted of felonies, violate the norms of civil society and commit felonies again" (People v Walker, 81 NY2d 661, 665 [1993]; see People v Cagle, 7 NY3d 647, 651 [2006]). As we explained in the Sparber context:

> "[A] defendant who was sentenced for a prior conviction and then commits a new crime plainly deserves enhanced punishment for the new crime because the defendant remains unchastened after the court's pronouncement of the sentence for the prior conviction, and the defendant's heightened culpability cannot be mitigated in any way by a subsequent Sparber resentencing"

(Boyer, 22 NY3d at 26 [emphasis added]).

Precisely the same rationale applies regardless of the reason the original sentence was later held to be illegal, because the legislature has determined that merely hearing a sentence imposed should deter further unlawful conduct (see Morse, 62 NY2d at 222). By following the legislative directive that the governing date under the sequentiality requirement is when "[s]entence upon such prior conviction [was] imposed" (Penal Law § 70.06 [1] [b] [ii]), we give the prior illegal sentence only as much "operative legal effect"

(dissenting op at 2) as the Penal Law allows, and effectuate the purpose of the multiple offender statutes—namely, to hold defendants accountable for failing to comport with the norms of civil society even after being subjected to the "chastening effect of sentence on [a] prior conviction" (Morse, 62 NY2d at 219).[7]   Moreover, the rule we espouse today "promotes clarity and fairness" and "does not favor one party over the other" (Boyer, 22 NY3d at 26).   Just as defendants are barred from using the date of a subsequent resentencing to interrupt the sequence of their criminal history and avoid an enhanced sentence, so too will the People be precluded from using a resentence to extend artificially the 10-year look-back period to crimes that would otherwise fall outside that period. Indeed, applying the resentence date instead of the original sentence date could, in some cases, defeat the ameliorative purpose of the look-back period, which requires only that "prior felons . . . demonstrate their ability to live within the norms of civil society for 10 years" (Cagle, 7 NY3d at 651).[8]   Such a rule would also render a defendant's predicate

_____

[7] We cannot agree with the dissent that, upon resentence, the original sentence was wholly without legal effect.  After vacating the original sentences on the 1989 convictions, defendant was resentenced, nunc pro tunc, and duly credited for the time served beginning from the date of his original sentences (see Penal Law § 70.30 [5] ["(w)hen a sentence of imprisonment that has been imposed on a person is vacated and a new sentence is imposed on such person for the same offense, or for an offense based upon the same act, the new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced, and all time credited against the vacated sentence shall be credited against the new sentence"]).

[8] The dissent's theory that, "if the resentencing date controls, the People will have an additional incentive to move promptly to correct the illegal sentence" (dissenting op at 10 n 2) fails to acknowledge that the People must move to set aside a sentence "upon the ground that it was invalid as a matter of law" within "one year after entry of a judgment" (CPL 440.40 [1]; cf. Correction Law § 601-d).  However, a defendant has no similar time restriction.  Consequently, if defendant's position on appeal were accepted, a defendant

felony status arbitrary, since it would depend entirely upon when a successful challenge to

the sentence on the underlying conviction was made.  In fact, defendant here already served

the sentences that were subsequently determined to be illegal.  Thus, in moving to set aside

his original 1989 sentences, "defendant[] manifestly had no expectation that [he] would

obtain relief from those originally imposed, fully discharged sentences" (People v

Acevedo, 17 NY3d 297, 303 [2011] [internal quotation marks omitted]).  Rather, it is

"transparent" from the timing of defendant's CPL 440.20 motion that his "purpose was, by

means of vacatur and resentence, to render [the] prior convictions useless as predicates to

enhance punishment for the crimes . . . subsequently committed" (id.).  As we previously

have stated, "[r]esentence is not a device appropriately employed simply to alter a

sentencing date and thereby affect the utility of a conviction as a predicate for the

imposition of enhanced punishment" (id.).[9]

---

could conceivably manipulate the availability of a predicate felony conviction by strategic
timing of a motion to resentence.

[9] The dissent reasonably concedes that the legislature may have "intended to keep prior
crimes in their original sequence even where a resentencing has occurred and the original
sentence has been vacated," but concludes that the legislative history on this issue is
"sparse," the sequentiality requirement has never been amended despite other amendments
to the statute, and the Appellate Division departments have universally determined that the
resentencing date applies (dissenting op at 3, 8-9).  Then—in an apparent attempt to support
its conclusion that the legislature intended the resentencing date to govern sequentiality—
the dissent cites the legislature's failure to enact the Advisory Committee on Criminal Law
and Procedure's proposed amendment to the predicate felony statutes that would more
clearly state that the original sentence date applies in cases such as this.  Legislative
inaction, however, "is a weak reed upon which to lean in determining legislative intent"
(Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 433 [1969] [internal quotation marks
and citation omitted]; see People v Ocasio, 28 NY3d 178, 183 n 2 [2016] ["(legislative)
inaction is susceptible to varying interpretations"]).  It is equally likely that the legislature
has failed to enact the proposed amendment because it recognized, as we hold today, that

-III-

In sum, defendant's proffered interpretation of Penal Law § 70.06 is not supported by the plain language of that provision, its well-established legislative purpose, or our precedent.  Therefore, because the original sentences on defendant's 1989 convictions were imposed before commission of the present felony, the sequentiality requirement of the predicate felony statute was satisfied, and defendant was properly sentenced as a second felony offender.

Accordingly, the order of the Appellate Division should be reversed, and defendant's motion to set aside the sentence denied.

---

the predicate felony statutes already unambiguously require sentencing courts to look to the date of the original sentence.  Moreover, the Advisory Committee recommendation itself recognizes, by citation to <u>Morse</u>, that the intent of the predicate felony statute is well-settled—that is, "to impose more severe punishment on persons who continue to commit serious crimes relatively soon after having been subjected to punishment for other serious criminal conduct" because of "a defendant's disregard for the 'chastening effect of sentence on the prior conviction'" (<u>see</u> Report of the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York, Jan. 2013 at 21, available at https://www.nycourts.gov/LegacyPDFS/IP/judiciaryslegislative/pdfs/2013-CriminalLaw&Procedure-ADV-Report.pdf [accessed January 24, 2019], quoting <u>People v Morse</u>, 62 NY2d at 219).

People v Michael Thomas

No. 5

FAHEY, J. (dissenting):

It has been a fundamental principle of our jurisprudence that an illegal sentence cannot stand, so much so that we do not require the preservation of a challenge to such a sentence (see People v Nieves, 2 NY3d 310, 315 [2004]; People v Samms, 95 NY2d 52,

56 [2000]).  Here the Court is required to look to the first legal sentence, not the original sentence.  Legality should prevail over chronology.

The majority's interpretation of Penal Law § 70.06 cannot be reconciled with several undisputed facts.  The sentences imposed upon defendant in 1989 were illegal.  For that reason, upon defendant's motion, those sentences were vacated in their entirety, and new, legal terms of imprisonment were imposed.  The original 1989 sentences therefore ceased to exist.  The only "sentences" that currently exist on those 1989 convictions were imposed in 2009 and 2012.  Thus, "sentences" on defendant's 1989 convictions were not "imposed" before defendant committed his 1993 felony (see Penal Law § 70.06 [1] [b] [ii]).

In allowing the date of the original, vacated sentences to control, the majority has allowed illegal sentences to continue to have operative legal effect.  I therefore respectfully dissent.

I.

The majority first concludes that defendant's position that the resentencing date should control cannot be reconciled with the plain language of the statute.  This conclusion is based on the observation that the legislature used the word "sentence" and not "resentence" in the text of the statute (see Penal Law § 70.06 [1] [b] [ii]).  Yet the legislature also did not use the phrase "original sentence" or similar language that might indicate that it intended for anything other than the *currently-existing, legal* sentence imposed on the conviction to apply for second felony offender purposes.

Indeed, although Penal Law § 70.06 has been amended several times since its enactment in 1973, the particular subparagraph at issue here—Penal Law § 70.06 (1) (b) (ii)—remains in its original form (see L 1973, ch 277, § 9). This law was enacted at the same time as comprehensive legislation addressing, among other things, harsher prison sentences for drug offenses (see L 1973, chs 276-278; Governor's Mem approving L 1973, chs 276-277, 1973 NY Legis Ann at 1-4; M.A. Farber, *Fixed-Term Laws Draw Opposition: Groups Criticize Mandatory Minimums Set by State for Non-Drug Crimes*, NY Times, Sept. 24, 1973, at 1, 20, available at https://www.nytimes.com/1973/09/24/ archives/ fixedterm-laws-draw-opposition-groups-criticize-mahdatory-minimums.html [last accessed Feb. 12, 2019]). In this context, there is no reason to believe that the use of the term "[s]entence" in Penal Law § 70.06 (1) (b) (ii) represents anything other than the legislature's assumption that the sentence imposed upon the prior conviction would be a legal one.

I disagree with the majority's assertion that the Criminal Procedure Law "directs that the sentence imposed as part of the final judgment is the original sentence imposed on the conviction, not a resentence" (majority op at 7). CPL 1.20 (15) states that a judgment consists of "a conviction and the sentence imposed thereon"; it does not state that a "resentence" cannot constitute a "sentence," particularly where the original sentence was vacated as illegal and no longer exists. Furthermore, CPL 450.30 (3) does not support the majority's interpretation because it expressly states that "*[f]or purposes of appeal*, the judgment consists of the conviction and the original sentence only" (emphasis added). This

provision is meant merely to clarify that if the resentencing occurs more than 30 days after the original sentencing, a defendant must file two notices of appeal, one from the original judgment and one from the resentence, in order to preserve the right to appeal from both the judgment and the resentence, respectively (see id.).  The subdivision expressly states that its provisions are limited to appeals (id.).

The majority's conclusion that by using the word "sentence" in Penal Law § 70.06, the legislature meant "original sentence" to the exclusion of "resentences" simply because it separately employed those terms in CPL 450.30 is incorrect.  The Criminal Procedure Law contains multiple statutes that apply to "sentencing" (see e.g. CPL article 380).  These provisions remain applicable when a defendant is resentenced, even though those statutes use only the word "sentence" and not "resentence."  We recently held that CPL 380.40 (1), which provides that a defendant "must be personally present at the time sentence is pronounced," applies to a resentencing proceeding (see People v Estremera, 30 NY3d 268, 269 [2017]).  We reasoned that "whether such a proceeding is technically a 'resentencing' proceeding, as opposed to a proceeding to 'reimpose' a prior sentence, it is unquestionably a proceeding at which 'sentence is pronounced' as contemplated in CPL 380.40" (id. at 271).

It is undisputed that both the Penal Law and the Criminal Procedure Law are filled with references to "sentence" or "sentencing" that New York courts and criminal practitioners routinely and correctly apply equally to sentences and resentences.  The fact

that the legislature used the word "sentence" in Penal Law § 70.06 (1) (b) (ii) and not the word "resentence" is neither dispositive nor, in my view, particularly significant.

II.

With respect to this Court's precedent, I agree with the majority that People v Bell is distinguishable from the present case because there both the original conviction and the sentence were vacated after the defendant's successful appeal (73 NY2d 153, 165 [1989]). Nevertheless, Bell is instructive. The Court held that the applicable "sentence" for purposes of Penal Law § 70.06 was "the sentence imposed as a part of the final judgment," not the original sentence that was later vacated on appeal along with the conviction (id.). The Court said that it reached that holding "for the reasons stated" in the dissenting opinion of Justice Sullivan at the Appellate Division (id.). In that dissenting opinion, Justice Sullivan reasoned that upon vacatur of the judgment, the "defendant's earlier conviction was no longer a conviction," and "the sentence based on that conviction was no longer a sentence" (People v Bell, 138 AD2d 298, 300 [1st Dept 1988, Sullivan, J., dissenting]).

That reasoning applies equally to this scenario. The original sentences imposed on defendant's 1989 convictions were illegal and, for that reason, they were vacated in their entirety. Those original sentences no longer exist. In other words, upon their vacatur, each of the 1989 sentences "was no longer a sentence" (id.). The only "sentences" that currently exist for defendant's 1989 convictions are the legal sentences imposed in 2009 and 2012.

The majority's reliance on People v Thompson (26 NY3d 678 [2016]) is misplaced. Granted, we stated in that case that "unlike a 'sentence of probation'—a 'resentence' is not

defined as a 'sentence' under Penal Law § 70.04 (1) (b) (iii) for the purpose of calculating the 10-year look-back period" (id. at 687).  That statement, however, must be considered within the context of the case.  In Thompson, the defendant argued that the original sentencing date, at which a sentence of probation was imposed, should control for recidivist sentencing purposes, rather than the later resentencing date when his probation was revoked and he was sentenced to a term of imprisonment (see id. at 681-683).  We agreed with the defendant that the original sentencing date controlled based on our conclusion that "to *revoke* a penalty of probation does not equate to *annulling* a sentence" (id. at 681).  We relied on the conditional nature of a revocable sentence, describing it as a "tentative punishment in that it may be altered or revoked" (id. at 686 [internal quotation marks and alterations omitted]).  Importantly, we stated that "the substitution of a different punishment—such as incarceration—for the probation a defendant has violated does not constitute a *new* sentence, but rather a replacement of the original, conditional penalty reflected in the sentence" (id.).  Here, by contrast, the original sentences imposed on defendant's 1989 convictions were vacated and annulled.  Entirely new sentences were imposed in 2009 and 2012.  No revocable sentences are at issue.

The majority's reliance on People v Boyer (22 NY3d 15 [2013]) is puzzling.  As the majority acknowledges, the Boyer Court expressly stated that "[i]n reaching this conclusion regarding the significance of a Sparber resentencing under the sequentiality requirement for recidivist sentencing, we do not opine on the relationship between the recidivist sentencing statutes and any other form of resentencing" (id. at 26 n 3).  Even if

one were to rely on the reasoning of the <u>Boyer</u> Court despite this disclaimer, that reasoning supports the conclusion that the resentencing date controls under these circumstances. The Court concluded that a <u>Sparber</u> resentencing did not constitute "a vacatur of a defendant's entire original sentence" but rather amounted to the correction of a clerical error that did not "permit the resentencing court to alter the defendant's prison term or otherwise change any aspect of his or her sentence" (<u>id.</u> at 24). In other words, a <u>Sparber</u> resentencing "to correct the flawed imposition of PRS does not vacate the original sentence and replace it with an entirely new sentence, but instead merely corrects a clerical error and leaves the original sentence, along with the date of that sentence, undisturbed" (<u>id.</u>).

None of those conditions are present here. The original sentences imposed upon defendant's 1989 convictions were illegal, and therefore when the court resentenced defendant in 2009 and 2012, the court was *obligated* to vacate the entire original sentence and alter the prison term to a legal term. There is no dispute that here defendant's original sentences were vacated and replaced with entirely new sentences.

The majority cites <u>Estremera</u> to note that we have recently clarified that "a <u>Sparber</u> resentencing does, in fact, correct an 'illegal' sentence" (majority op at 9). We cautioned in <u>Estremera</u>, however, that "nothing herein should be read to conflict with our prior decision in [<u>Boyer</u>]" (<u>Estremera</u>, 30 NY3d at 271 n 2). The majority's decision calls into question our reasoning in <u>Boyer</u>, which was based primarily on the fact that a <u>Sparber</u> resentencing was akin to the correction of a clerical error, the original term of imprisonment was legal and remained unchanged, and the original sentence was not vacated and replaced

with an entirely new sentence.  Today, the majority holds that even where the original term of imprisonment was illegal, was vacated for that reason at a plenary resentencing, and was replaced with an entirely new sentence, the original sentence continues to control for purposes of the recidivist sentencing statutes.  The majority's conclusion is not supported by the Court's reasoning in Boyer.

III.

Finally, the majority concludes that utilizing the original sentencing date despite the plenary resentencing effectuates the legislative purpose of the recidivist sentencing statutes (see majority op at 10-12).  It is possible that the legislature intended to keep prior crimes in their original sequence even where a resentencing has occurred and the original sentence has been vacated.  Nevertheless, there is no legislative history addressing this issue, and we have previously described the legislative history surrounding this enactment as "sparse" (People v Cagle, 7 NY3d 647, 651 [2006]).  As explained above, the legislature may have simply assumed that the sentence imposed on the prior crime would be a legal one.  It is equally possible, in my view, that the legislature would *not* wish the courts to give legal effect to an illegal sentence that has been vacated and no longer exists when applying the recidivist sentencing statutes.

Indeed, the Appellate Division has generally arrived at the opposite conclusion of the majority here, and has held that the resentencing date controls when the original sentence has been vacated (see People v Jamison, 138 AD3d 1020, 1021 [2d Dept 2016], lv denied 28 NY3d 931 [2016]; People v Esquiled, 121 AD3d 807, 808 [2d Dept 2014], lv

denied 25 NY3d 1201 [2015], reconsideration denied 26 NY3d 967 [2015]; People v

Boyer, 19 AD3d 804, 806 [3d Dept 2005], lv denied 5 NY3d 804 [2005]; People v Wright,

270 AD2d 213, 215 [1st Dept 2000], lv denied 95 NY2d 859 [2000]; People v Robles, 251

AD2d 20, 21 [1st Dept 1998], lv denied 92 NY2d 904 [1998]; People v Juliano, 207 AD2d

414, 415 [2d Dept 1994], lv denied 84 NY2d 937 [1994]).  The People have not identified

any case where the Appellate Division has applied the original sentencing date after the

original sentence has been vacated and an entirely new sentence has been imposed.[1]

Furthermore, I would apply the resentencing date as a matter of fairness.  This Court

has generally refused to interpret the predicate felony offender sentencing statutes in a

manner that takes into account an illegal incarceration (see generally People v Small, 26

NY3d 253, 260-261 [2015]; People v Dozier, 78 NY2d 242, 249-250 [1991]; People v

Love, 71 NY2d 711, 716 [1988]).  Although the underlying conviction was either invalid

---

[1] In addition, since 2013, the Advisory Committee on Criminal Law and Procedure has recommended that the legislature amend the recidivist sentencing statutes to clarify that where, as here, the original sentence has been vacated as illegal and the defendant is resentenced, but the underlying conviction is not disturbed, the controlling sentencing date is the date that the original sentence was imposed (see Report of the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York, Jan. 2013, at 21-23, available at https://www.nycourts.gov/LegacyPDFS/IP/judiciaryslegislative/pdfs/2013-CriminalLaw&Procedure-ADV-Report.pdf [last accessed Feb. 12, 2019]).  After 2013, this recommendation has been included in the Advisory Committee Report either as a "Previously Endorsed Measure" or a "Temporarily Tabled Previously Endorsed Measure" (see Reports of the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York, Jan. 2014-Jan. 2018). Despite the Appellate Division decisions and the Advisory Committee's recommendation, the legislature has not acted to clarify that it intends for the original sentencing date to control under these circumstances.

or called into question in those cases, the same logic should apply here. An illegal, vacated sentence should not be used to enhance a defendant's future punishment.

Moreover, like the majority's rule (see majority op at 12), a rule that applies the resentencing date where the original sentence has been vacated would not favor either the defendant or the People. In some cases, like this one, the defendant will benefit, but in others, the resentencing date will bring a defendant's prior conviction within the 10-year look-back period (see e.g. Juliano, 207 AD2d at 415).[2]

The majority's holding allows a sentence that has been vacated as illegal and no longer exists to be used to enhance the punishment imposed upon a defendant for a subsequent criminal offense. This holding is not supported by the text of the statute or any legislative history, conflicts with our prior case law, and most importantly is unjust. I therefore respectfully dissent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed and defendant's motion to set aside sentence denied. Opinion by Judge Stein. Chief Judge DiFiore and Judges Garcia and Feinman concur. Judge Fahey dissents in an opinion in which Judges Rivera and Wilson concur.

Decided February 19, 2019

---

[2] Few if any criminal defendants will knowingly serve illegally harsh sentences in the hope that if they commit another felony in the future, they will be able to move for resentencing and thereby alter the sequence of their criminal history in order to avoid enhanced punishment under the recidivist sentencing statutes. In most cases, the resentencing will likely occur in far closer temporal proximity to the original sentencing. In addition, if the resentencing date controls, the People will have an additional incentive to move promptly to correct the illegal sentence if the defendant fails to do so.